UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED
SEP 29 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | |
|---|---|
| VENETIAN CASINO RESORT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civ. No. 00-2980 (RJL) |
| ) | |
| EQUAL EMPLOYMENT ) | |
| OPPORTUNITY COMMISSION, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OPINION
(September 29, 2006) [#46, 48]

Plaintiff, Venetian Casino Resort ("Venetian" or "Venetian Casino"), brings this action against defendant, the Equal Employment Opportunity Commission ("EEOC" or "the Commission"), seeking to prevent the EEOC from releasing documents acquired from plaintiff during past and current EEOC investigations. Plaintiff alleges that the EEOC's policy regarding the disclosure of confidential and/or proprietary information obtained through the Commission's investigations violates Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; the Trade Secrets Act, 18 U.S.C. § 1905; the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*; Executive Order No. 12,600, §§ 1-3, Fed. Reg. 23781 (June 23, 1987); the Copyright Act, 17 U.S.C. § 101, *et. seq.*; and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 553, 701-06. Currently before the Court are defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment and

plaintiff's Motion for Summary Judgment and/or Declaratory Judgment.[1] For the reasons set forth below, defendant's Motion for Summary Judgment is GRANTED and plaintiff's cross-motion is DENIED.

## BACKGROUND[2]

In the spring of 1999, the Venetian Casino conducted a "mass hiring process" to staff a new hotel, casino, and resort in Las Vegas. (Am. Compl. ¶ 4.) In its wake, at least eleven people filed employment discrimination complaints with the EEOC against Venetian, alleging discrimination based on age, race, and color in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, and Title VII. (*Id.* ¶¶ 7, 82.)

As part of investigating the complaints, the EEOC requested from Venetian Casino certain information, including data about the employees. (*Id.* ¶ 28.) When Venetian did not respond to the EEOC's information requests, the Commission issued an administrative subpoena for the information. (*Id.*) Venetian objected to the subpoena through the EEOC's administrative subpoena procedures as outlined in 29 C.F.R. § 1601.16. (*Id.* ¶ 30.) The EEOC denied those objections (*id.*), and Venetian then brought this action against the EEOC for declaratory and injunctive relief in December 2000.

In February 2002, Venetian settled all claims related to race, color, and national origin

---

[1] Pursuant to the Court's November 10, 2005 Order (*see* Dkt. #44), these motions will be considered as cross-motions for summary judgment.

[2] The "Background" section of this Memorandum Opinion has been adapted from this Court's earlier Memorandum Opinion in *Venetian Casino Resort v. EEOC*, 360 F. Supp. 2d 55 (D.D.C. 2004).

under Title VII, but not the claims of age discrimination. (*See* Order of Dismissal, Dkt. #22.) The EEOC's age discrimination files for the Venetian, as a result, remained open.

At this juncture, Venetian's overarching contention is that the EEOC's policy regarding the disclosure of information deemed confidential and/or proprietary violates Title VII, the Trade Secrets Act, FOIA, Executive Order No. 12,600, the Copyright Act, and the APA. Indeed, Venetian contends that because the EEOC does not require employers that submit information to be given predisclosure notice, the EEOC's current policy constitutes a "back door" by which charging parties, their counsel, and incidental third parties may obtain access to open case files without the need for a FOIA request.[3]

On January 12, 2004, this Court granted defendant's Motion to Dismiss on the ground that the issue was not ripe for review. *Venetian Casino Resort v. EEOC*, 360 F. Supp. 2d 55, 60 (2004). On May 27, 2005, our Circuit reversed, holding that "the question of whether EEOC's disclosure policy is lawful presents a live and focused dispute emanating from agency action that is both final and consequential to Venetian." *Venetian Casino Resort v. EEOC*, 409

---

[3] The relevant disclosure provision is contained in Section 83 of the EEOC's compliance manual. (Though it is not definitively clear whether the 1987 or 1992 version constitutes the "official version" of the manual, Section 83 is identical in all material aspects in the two versions.) According to the policy, the EEOC can disclose information from closed Title VII and ADA case files under either Section 83 or FOIA; FOIA procedures do not apply to Section 83 disclosures. (Inzeo Decl. ¶ 8 (attached to Def.'s Mot. Summ. J.).) Section 83 does not require EEOC staff to notify persons that have submitted information—confidential or otherwise—to the EEOC during an investigation when a request for that information is received or prior to the release of that information. (*Id.* ¶ 10.) Thus, the EEOC policy lacks the requirement of predisclosure notice to the submitter as demanded by Venetian Casino. (Def.'s Opp'n to Pl.'s Mem. of Remaining Issues at 5.)

3

F.3d 359, 367 (2005). Accordingly, this Court issued an Order on November 10, 2005, requiring both parties to file cross-motions for summary judgment on the following issue: "*Assuming* the EEOC has a disclosure policy or practice, written or otherwise, that allows the agency to release documents that the submitting party has identified as containing trade secrets and/or confidential material without first notifying the submitting party, whether the policy is lawful." (Order, Dkt. #44 (emphasis in original).) Briefing was complete on January 30, 2006, and thus, this is the sole issue currently before the Court.

## ANALYSIS

Reduced to its essence, plaintiff's contend that the disclosure policy of the EEOC by which it releases documents that the submitting party has identified as containing trade secrets and/or confidential matters, without first notifying the submitting party, is unlawful because it violates (1) Title VII; (2) the Trade Secrets Act and the FOIA; (3) Executive Order 12,600; (4) the Copyright Act; and (5) the APA.[4] For the following reasons, the Court disagrees and,

---

[4] The EEOC also argues that this Court lacks subject matter jurisdiction over Venetian's claims because there has been no final agency action as is required by the APA. The APA provides that any "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. Administrative actions, such as the type at issue here, can only be fit for review, however, if the action is a "final agency action" under 5 U.S.C. § 704 (2000). *See Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967). "If there is no 'final agency action' as required by the [APA], a court lacks subject matter jurisdiction." *Veldhoen v. U.S. Coast Guard*, 35 F.2d 222, 225 (5th Cir. 1994) (citing *Fed. Power Comm'n v. Metropolitan Edison Co.*, 304 U.S. 375, 383-85 (1938)).

The United States Supreme Court and our Circuit have uniformly held that for agency action to be final, it "must mark the 'consummation' or the agency's decisionmaking process, and must either determine 'rights or obligations' or occasion 'legal consequences.'" *Alaska Dept. of Envtl. Conservation v. EPA*, 540 U.S. 461, 483 (2004) (internal quotations omitted). As formulated by the D.C. Circuit:

accordingly, GRANTS the EEOC's Cross Motion for Summary Judgment.[5]

---

> In the administrative setting, two conditions must be satisfied for agency action to be final: First, the action must mark the consummation of the agency's decisionmaking process – it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow[.]

*Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1022 (2000) (internal citations and quotation marks omitted).

Defendant argues that its action in the present case fails to satisfy the second prong of the test in *Appalachian* and that this Court therefore lacks jurisdiction to decide the case on its merits. This contention directly contradicts our Circuit's May 2005 holding in the instant case, however. In reviewing this Court's previous decision in *Venetian Casino Resort v. EEOC*, 360 F. Supp. 2d 55 (D.D.C. 2004), our Circuit held that "[i]n short, the question whether the EEOC's disclosure policy is lawful presents a live and focused dispute *emanating from agency action that is both final and consequential* to Venetian." *Venetian Casino Resort, L.L.C. v. EEOC*, 409 F.3d 359, 367 (D.C. Cir. 2005) (emphasis added). In reaching this decision, the court applied "[t]he framework for assessing ripeness . . . established in *Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967)." In *Abbott Laboratories*, the U.S. Supreme Court held that, for administrative determinations to be ripe for judicial review, the issue must be purely legal and constitute "final agency action." *Id.* at 149. Thus, implicit in our Circuit's holding in the instant case—that the controversy is fit for judicial review—is the finding that the EEOC's action constituted "final agency action." For this reason, this Court properly has subject matter jurisdiction.

---

[5] Under Federal Rule of Civil Procedure 56, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). In deciding whether there is a disputed issue of material fact, the Court must draw all justifiable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Where the court finds that facts material to the outcome of the case are at issue, a case may not be disposed of by summary judgment. *Id.* at 248. If the facts in dispute are "merely colorable, or . . . not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted). Though the moving party bears the burden of establishing that there are no genuine issues of material fact and that judgment on the legal issues is appropriate in its favor, *Celotex*, 477 U.S. at 322-24, a party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial," Fed. R. Civ. P. 56(e). "[T]he determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case." *Anderson*, 477 U.S. at 255. If there is insufficient evidence indicating that a jury could return a favorable verdict for the nonmoving party, then summary judgment is proper. *Id.* at 252.

1.     *Title VII of the Civil Rights Act of 1964*

In creating the EEOC under Title VII, Congress combined administrative and judicial means of eliminating employment discrimination.[6] Title VII gives the EEOC two formal means of obtaining information when it investigates a charge: (1) The EEOC may examine and copy any evidence in the possession of the employer being investigated, 42 U.S.C. § 2000e-8(a), and (2) it may subpoena evidence and documents, 42 U.S.C. § 2000e-9. Title VII limits the ability of the EEOC to make public disclosures of information gathered during its investigations, however, directing that "[c]harges shall not be made public by the Commission." 42 U.S.C. § 2000e-5(b). And while it does not define the word "public," as it is used in its regulation governing disclosure, the EEOC construes the statute's prohibition of "public" release of information to permit pre-litigation disclosure of charges and of investigative information *to the parties* or witnesses where such disclosure "is deemed necessary for securing appropriate relief."[7] 29 C.F.R. § 1601.22 (emphasis added); *see also*

---

[6]     A person claiming to be the victim of discrimination first files a charge with the EEOC, which then serves notice of the charge on the employer and opens an investigation to determine whether there is reasonable cause to believe the charge is true. 42 U.S.C. § 2000e-5(b). If it finds reasonable cause, as it did in the instant case, it must try to eliminate the alleged discriminatory practice "by informal methods of conference, conciliation, and persuasion." *Id.* If these attempts fail, the EEOC may bring a civil action against the employer. 42 U.S.C. § 2000e-5(f)(1).

[7] The EEOC's disclosure regulation provides in full:

Neither a charge, nor information obtained during the investigation of a charge of employment discrimination under the ADA or Title VII, nor information obtained from records required to be kept or reports required to be filed pursuant to the ADA or Title VII, shall be made matters of public information by the Commission prior to the institution of any proceeding under the ADA or Title VII involving such charge

*Equal Employment Opportunity Comm'n v. Associated Dry Goods Corp.*, 449 U.S. 590, 596 (1981). Indeed, the EEOC's disclosure regulation specifically codifies this position. *See* 29. C.F.R. § 1601.22 (permitting "disclosures to charging parties, or their attorneys, respondents or their attorneys, or witnesses where disclosure is deemed necessary for securing appropriate relief").

Despite this statutory disclosure limitation, the United States Supreme Court, in *Equal Employment Opportunity Commission v. Associated Dry Goods, Corp.*, 449 U.S. 590 (1981), explicitly upheld the EEOC's practice of making limited disclosures of confidential information to charging parties of their own Title VII charge files. *Id.* at 597-603. In *Associated Dry Goods*, as in the present case, an employer sued the EEOC seeking a declaration that the EEOC's disclosure policy embodied in Section 83 of its Compliance Manual was unlawful. Specifically, the employer alleged a violation of the confidentiality provisions of Title VII. In holding that the disclosure policy did not violate Title VII, the Supreme Court specifically noted the principle that courts should respect an agency's contemporaneous construction of its founding statute, reasoning that the principle supports

---

> or information. The provision does not apply to such earlier disclosures to charging parties, or their attorneys, respondents or their attorneys, or witnesses where disclosure is deemed necessary for securing appropriate relief. This provision also does not apply to such earlier disclosures to representatives of interested Federal, State, and local authorities as may be appropriate or necessary to the carrying out of the Commission's function under Title VII or the ADA, nor to the publication of data derived from such information in a form which does not reveal the identity of charging parties, respondents, or persons supplying the information.

29 C.F.R. § 1601.22.

affirming the EEOC's interpretation of Title VII, since the EEOC issued its disclosure policy shortly after Congress created it in 1965. *Id.* at 600 n.17 (citing *Power Reactor Dev. Co. v. Int'l Union of Elec., Radio & Mach. Workers, AFL-CIO*, 367 U.S. 369, 408 (1961)). Further, the Supreme Court held that such a contemporaneous construction warrants special deference when it has remained consistent over a long period of time. *Id.* (citing *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 210 (1972)).

The current EEOC disclosure regulation, like that in effect at the time the *Associated Dry Goods* decision was rendered, reflects no significant change from the original regulation that permitted disclosure to the charging party and others "as may be appropriate or necessary to the carrying out of the Commission's functions . . . ." 30 Fed. Reg. 8409 (1965); *cf.* 29 C.F.R. § 1601.22. The Supreme Court further noted that Congress never expressed disapproval of the procedure, and its silence suggests its consent to the EEOC's practice. *Associated Dry Goods*, 449 U.S. at 600 n.17 (citing *United States v. Jackson*, 280 U.S. 183, 196-97 (1930)) This is precisely the practice that plaintiff challenges in this suit.

Moreover, in upholding the EEOC's disclosure policy, the Supreme Court concluded that the EEOC's interpretation of its founding statute

> is consistent with the coordinated scheme of administrative and judicial enforcement which Congress created to enforce Title VII. First, limited disclosure to the parties can speed the Commission's required investigation: the Commission can more readily obtain information informally—rather than through its formal powers under 42 U.S.C. § 2000e-9—if it can present the parties with specific facts for them to corroborate or rebut. Second, limited disclosure enhances the Commission's ability to carry out its statutory responsibility to resolve charges through informal conciliation and negotiation:

8

> A party is far more likely to settle when he has enough information to be able to assess the strengths and weaknesses of his opponent's case as well as his own.

*Id.* at 600-01. The Court further reasoned that "[i]f the Commission were not allowed to disclose to the parties essential facts it obtained during its investigation, it would be able to announce no more than its bare conclusion on reasonable cause, and these important benefits of the reasonable-cause determination would be lost." *Id.* at 601 n.18.

Finally, the EEOC's disclosure policy also supports Title VII's scheme of enforcement, an important part of which is the private right of action. *Id.* at 602 (citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 45 (1974)). As the *Associated Dry Goods* Court noted, "Congress considered the charging party a 'private attorney general' . . . [who] could hardly play that role without access to information needed to assess the feasibility of litigation." *Id.* at 602. Thus, for all of these reasons, plaintiff's claim that the EEOC's disclosure policy is violative of Title VII is of no avail.[8]

### 2. *The Trade Secrets Act & Freedom of Information Act*

In its Opposition to the EEOC's Motion for Summary Judgment and in its own cross-

---

[8] The Supreme Court's affirmation of the EEOC's disclosure policy is bolstered by its decision in *University of Pennsylvania v. Equal Employment Opportunity Commission*, 493 U.S. 182 (1990). In its decision, the Supreme Court reviewed the confidentiality provisions of Title VII and rejected the University's argument that more confidentiality was needed, declaring that "Congress apparently considered the issue of confidentiality, and it provided a modicum of protection." *Id.* at 192. Though the protection of confidentiality provided by 42 U.S.C. § 2000e-8(e) is less than complete, the Court noted that "[t]he costs that ensue from disclosure, however, constitute only one side of the balance. As Congress recognized, the costs associated with . . . discrimination . . . are very substantial. Few would deny that ferreting out this kind of invidious discrimination is a great, if not compelling, governmental interest." *Id.* at 193.

motion for summary judgment, plaintiff next argues that the Trade Secrets Act, 18 U.S.C. § 1905, prohibits the EEOC from disclosing confidential information without notice to the submitting party and that it has a private right of action under this Act. The Court disagrees.

The Act itself, in pertinent part, provides:

> Whoever, being an officer or employee of the United States or of any department or agency thereof . . . publishes, divulges, discloses, or makes known in any manner or to any extent not authorized by law any information coming to him in the course of his employment or official duties or by reason of any examination or investigation made by, or return, report or record made to or filed with, such department or agency or officer or employee thereof, which information concerns or relates to the trade secrets, processes, operations, style of work, or apparatus, or to the identity, confidential statistical data, amount or source of any income, profits, losses, or expenditures of any person, firm, partnership, corporation, or association; or permits any income return or copy thereof or any book containing any abstract or particulars thereof to be seen or examined by any person except as provided by law; shall be fined under this title, or imprisoned not more than one year, or both; and shall be removed from office or employment.

18 U.S.C. § 1905.

By its terms, the Trade Secrets Act is a criminal statute that proscribes the behavior of individual officers of the government and its agencies. Recognition that the Act is a criminal statute is significant because, as our Circuit has held, it must therefore be narrowly construed. *Charles River Park A., Inc. v. Dep't of Housing & Urban Dev.*, 519 F.2d 935, 943 (D.C. Cir. 1975). Indeed, the Supreme Court, in *Chrysler Corp. v. Brown*, 441 U.S. 281, 316 (1979), acknowledged as much when it held that the Trade Secrets Act does not afford a private right of action to enjoin disclosure of information in violation of the statute. In that decision, the Court referenced its decision in *Cort v. Ash*, 422 U.S. 66 (1975), stating that "this Court has

rarely implied a private right of action under a criminal statute." *Chrysler Corp.*, 441 U.S. at 316. Importantly, the text of the Trade Secrets Act does not endeavor to create affirmative obligations on agencies for its implementation and does not require that agencies issue regulations governing its provisions. This omission is significant because our Circuit, in discussing the Trade Secrets Act, has noted that it is "considerably more reluctant to engraft numerous and significant qualifications onto an apparently clear, unambiguous text where the provision is criminal rather than civil in nature." *CNA Fin. Corp. v. Donovan*, 830 F.2d 1132, 1150 (D.C. Cir. 1976). The Trade Secrets Act alone, therefore, does not mandate any particular EEOC procedure such as pre-release notification, nor should any be grafted on by this Court.[9]

---

[9] A facially more difficult question is presented by the conclusion of our Circuit in *CNA Financial Corp.* that the scope of the Trade Secrets Act is at least co-extensive with that of Exemption 4 of FOIA, 5 U.S.C. § 552(b)(4). *CNA Fin. Corp.*, 830 F.2d at 1151. In a broad sense, FOIA places a general obligation on agencies to make information available to the public, *see* 5 U.S.C. § 552(a), and lists exemptions that identify certain materials that are not subject to its disclosure obligations, *see* 5 U.S.C. § 552(b). Exemption 4, referenced in *CNA Financial Corp.*, provides that FOIA's disclosure requirements do not apply to "trade secrets and commercial or financial information obtained from a person and privileged or confidential," 5 U.S.C. § 552(b)(4), and it is the Trade Secret Act's relation to this exemption that plaintiff argues prohibits the EEOC's disclosure in the instant case.

A plain reading of FOIA, however, belies plaintiff's argument. Section 552(a) of FOIA lists the types of information that agencies shall make available to the public, while Section 552(b) lists matters to which the preceding section does not apply. Section 552(b) does not mandate that disclosure of such materials is absolutely prohibited. Indeed, such a plain reading of the statute is consistent with the Supreme Court's interpretation of FOIA. In *Chrysler Corp.*, the Court held that "FOIA is exclusively a disclosure statute . . . . [and] does not give the authority to bar disclosure." 441 U.S. at 292. The Court further found that, with respect to FOIA, "the congressional concern was with the *agency's* need or preference for confidentiality; the FOIA by itself protects the submitters' interest in confidentiality only to the extent that this interest is endorsed by the agency collecting the information." *Id.* at 292-93 (emphasis in original). The Court ultimately concluded that "Congress did not limit an agency's discretion to disclose information when it enacted the FOIA. It necessarily

### 3. *Executive Order 12,600*

Plaintiff further contends that Executive Order No. 12,600, 52 Fed. Reg. 23,781 (June 23, 1987), prohibits the EEOC from disclosing the information at issue in the present suit. Plaintiff specifically cites Section 1 of the Order, which provides that

> The head of each Executive department and agency subject to the Freedom of Information Act shall, to the extent permitted by law, establish procedures to notify submitters of records containing confidential information[10] described in section, 3 of this Order, when those records are requested under [FOIA], if after reviewing the request, the responsive records, and any appeal by the requester, the department or agency determines that it may be required to disclose records. Such notice requires that an agency use good-faith efforts to advise submitters of confidential information of the procedures established under this Order.

*Id.* Plaintiff also bases its claim on Section 3(b) of the Order, which provides:

> For confidential commercial information submitted on or after January 1, 1988, the head of each Executive department or agency shall, to the extent permitted by law, establish procedures to permit submitters of confidential information to designate, at the time the information is submitted to the Federal government or a reasonable time thereafter, any information the disclosure of which the submitter claims could reasonably be expected to cause substantial competitive harm . . . . The head of each Executive Department or agency shall, to the extent permitted by law, provide the submitter notice in accordance with section 1 of this Order whenever the department or agency determines that it may be required to disclose records (I) designated pursuant to this subsection; or (ii) the disclosure of which the department or agency has reason to believe could reasonably be expected to cause substantial competitive harm.

---

follows that the Act does not afford [the plaintiff] any right to enjoin agency disclosure." *Id.* at 294.

[10]  Executive Order 12,600 defines "confidential" by reference to FOIA Exemption 4, stating in Section 2(a) of the Order that "'[c]onfidential commercial information' means records provided to the government by a submitter that arguably contain material exempt from release under Exemption 4 of the Freedom of Information Act, 5 U.S.C. 552(b)(4), because disclosure could reasonably be expected to cause substantial competitive harm." 52 Fed. Reg. 23,781 (June 23, 1987).

*Id.*

In fact, the EEOC has complied with the requirements of this Executive Order by publishing its predisclosure notification procedures. *See* 29 C.F.R. § 1610.19. In accordance with the EEOC's procedures regarding the disclosure of confidential commercial information, *the Commission must notify submitters when it receives a FOIA request for such documents and must also provide predisclosure notice to the submitter to allow the submitter an opportunity to seek judicial review of its decision to release the information. See* 29 C.F.R. §§ 1610.19(b)(3), (d).

In the instant action, however, there has been no FOIA request or any request at all for plaintiff's information. As such, Executive Order 12,600 has no applicability to the present action and thus can provide plaintiff with no legal basis to challenge Section 83 of the EEOC's Compliance Manual.

### 4.   *The Copyright Act*

Venetian Casino additionally alleges that Section 83 of the EEOC's Compliance Manual violates the Copyright Act, 17 U.S.C. § 101, *et seq.* (2000). The Copyright Act grants owners of copyrights various exclusive rights to reproduce and distribute copies of their copyrighted work, and further allows a copyright owner to sue persons who violate their exclusive rights. Specifically, the Act gives copyright owners

> the exclusive rights to do and to authorize any of the following: (1) to reproduce the copyrighted work in copies or phonorecords; (2) to prepare derivative works based upon the copyrighted work; (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of

13

ownership, or by rental, lease, or lending; (4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly; (5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and (6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.

17. U.S.C. § 106.

Significantly, while the Copyright Act proscribes infringement of copyrighted material, nothing in the Act requires confidential treatment by the government of copyrighted material. The Act provides an express remedy for alleged copyright violations: a private right of action for infringement. 17 U.S.C. § 501. Nothing in the Act requires the establishment of particular internal agency procedures. As such, the Copyright Act affords Venetian Casino no legal basis to challenge the EEOC's disclosure policy.

5. *The EEOC's Disclosure Policy Is Neither Arbitrary Nor Capricious, Nor Is It Otherwise Not In Accordance With The Law.*

Finally, plaintiff contends that the EEOC's disclosure policy is arbitrary and capricious and thus violative of the APA. The Court disagrees for the following reasons.

The APA provides that, in reviewing agency action, "the reviewing court shall [*inter alia*] hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706. As the Supreme Court has noted, when Congress "has explicitly left a gap for an agency to fill, there is an express delegation to the agency to elucidate a specific provision

14

of the statute by regulation," *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843-44 (1984), and such a regulation "is binding in the courts unless procedurally defective, arbitrary or capricious in substance, or manifestly contrary to the statute," *United States v. Mead Corp.*, 533 U.S. 218, 227 (2001). The Supreme Court has further noted that deference ought to be afforded to agencies in implementing regulations. "[T]he well-reasoned views of the agencies implementing a statute 'constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance'" *Bragdon v. Abbot*, 524 U.S. 624, 642 (1998) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 139-40 (1944)), and "[w]e have long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer," *Chevron*, 467 U.S. at 844; *see also Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565 (1980); *Zenith Radio Corp. v. United States*, 437 U.S. 443, 450 (1978). The proper measure of deference depends on numerous factors, including "the degree of the agency's care, its consistency, formality, and relative expertness, and . . . the persuasiveness of the agency's position."[11] *United States v. Mead Corp.*, 533 U.S. at 228 (footnotes omitted).

The "arbitrary and capricious" standard provided by the APA is a "highly deferential" standard, *see Envtl. Def. Fund, Inc. v. Costle*, 657 F.2d 275, 283 (D.C. Cir. 1981); *Ethyl Corp.*

---

[11]  As previously noted, the EEOC's disclosure policy has remained largely unchanged since the agency was first created in 1965. *Compare* 30 Fed. Reg. 8409 (1965) *with* 29 C.F.R. § 1601.22. Moreover, the policy "is consistent with the coordinated scheme of administrative and judicial enforcement which Congress created to enforce Title VII." *Associated Dry Goods*, 449 U.S. at 600. Plaintiff does not challenge the other factors listed above.

*v. EPA*, 541 F.2d 1, 34 (1976), which presumes the agency's action to be valid, *Envtl. Def. Fund, Inc.*, 657 F.2d at 283; *Nat'l Small Shipments Traffic Conference, Inc. v. Civil Aeronautics Bd.*, 618 F.2d 819, 826 (D.C. Cir. 1980). The party challenging the agency action bears the burden of overcoming this presumption. *Envtl. Def. Fund, Inc.*, 657 F.2d at 283 n.28;.*Udall v. Washington, Virginia, and Maryland Coach Co.*, 398 F.2d 765, 769 (D.C. Cir. 1968). The standard is a narrow one that forbids a court from substituting its own judgment for that of the agency. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971); *Envtl. Def. Fund, Inc.*, 657 F.2d at 283; *Ethyl Corp. v. EPA*, 541 F.2d at 34. Though the court is admonished against "rubber stamping" agency decisions as correct, *Envtl. Def. Fund, Inc.*, 657 F.2d at 283, its task is complete when it "find[s] that the agency has engaged in reasoned decisionmaking within the scope of its Congressional mandate," *id.* (quoting *Am. Radio Relay League, Inc. v. FCC*, 617 F.2d 875, 879 (D.C. Cir. 1980)). Importantly, "when the construction of an administrative regulation rather than a statute is in issue, deference is even more clearly in order." *United States v. Tallman*, 380 U.S. 1, 16 (1965).

In the instant case, the EEOC's policy cannot be said to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," such as to warrant judicial intervention pursuant to the APA. As discussed above, Section 83 of the EEOC's Compliance Manual, which contains the Commission's policy regarding the disclosure of information deemed confidential, does not violate any applicable statute. Moreover, as the Supreme Court itself has concluded, the policy "is consistent the coordinated scheme of administrative and

judicial enforcement which Congress created to enforce Title VII." *Associated Dry Goods*, 449 U.S. at 600. Accordingly, plaintiff has failed to meet its burden of proof, and summary judgment for defendant is therefore appropriate.

## CONCLUSION

For the foregoing reasons, the Court GRANTS defendant's Motion for Summary Judgment and DENIES plaintiff's cross-motion. An appropriate Order will issue with this Memorandum Opinion.

RICHARD J. LEON
United States District Judge